GRANT, RESPONDENT, v. HEWITT, APPELLANT.

(No. 4,753.)

(Submitted April 18, 1922. Decided May 24, 1922.)

[208 Pac. 887.]

*Promissory Notes—Pledges — Collateral — Sale, When not Obligatory—Pleadings—Amendments.*

Appeal and Error—Appeal from Judgment—Extent of Review.
  1. On appeal from a judgment only, the supreme court cannot review matters occurring after its rendition, though they are embodied in a bill of exceptions appearing in the record.

[63 Mont. 422.]

Promissory Notes—Pledge—Sale of Collateral not Obligatory.
  2. Under a pledge agreement of corporate stock as collateral security of a note authorizing the pledgee to sell the collateral upon default of the pledgor to pay the note, it was the pledgee's privilege, but not his duty, to sell the collateral and apply the proceeds upon the note, and his failure to do so did not deprive him of his right to proceed against the pledgor personally.
Same—Pledge—Sale of Collateral—Privilege not Duty of Pledgee—Judgment on Pleadings.
  3. Where the complaint on a promissory note alleged nonpayment of the note, its worthlessness as well as that of the collateral given as security, and the answer set up as a defense the failure of the payee to sell the collateral when it was of sufficient value to pay off the note, there was no issue presented, since the payee was not obliged to sell it, and therefore judgment on the pleadings was proper.
Pleadings—Answer—Amendments—When Refusal not Error.
  4. Where defendant's counsel had filed an answer based on such recollection as he had of the facts without having been able to obtain specific knowledge of them from his client, and thereafter during a period of more than two years the latter neglected to advise counsel as to the facts though repeatedly urged to do so, until shortly before the cause was set for trial, refusal to permit an amended answer to be filed was not an abuse of discretion.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by William S. Grant, Jr., against M. L. Hewitt. Judgment for plaintiff, and defendant appeals. Affirmed.

*Mr. F. W. Mettler,* for Appellant, submitted a brief and argued the cause orally.

By the action of the lower court, defendant was refused the right to amend his answer and judgment upon the merits was rendered against him. The effect of the lower court's `action was the same as if the court, upon a general demurrer to plaintiff's complaint, had rendered judgment in favor of the defendant upon the merits, notwithstanding the plaintiff, before the submission of the demurrer, had asked leave to amend his complaint and set up a good cause of action.

It has been held by this court that it is error, upon granting a motion on the pleadings, to enter judgment on the merits,

  2. Duty of pledgee of stock to sell at maturity of debt, see notes in 7 Ann. Cas. 395; 3 L. R. A. (n. s.) 1199; L. R. A. 1918A, 442.

where the effect would be to deprive a party of the right to subsequently prosecute a cause of action insufficiently stated in his complaint. (*Peterson* v. *City of Butte,* 44 Mont. 129, 120 Pac. 231.) A motion for judgment on the pleadings is not deemed a proper method of objecting to the sufficiency of a pleading. And the granting of judgment upon the pleadings, upon motion, is not looked upon with favor by the courts. (31 Cyc. 606.) If there is an issue framed by the pleadings, judgment on the pleadings is error. (*Floyd* v. *Johnson,* 17 Mont. 469, 43 Pac. 631.) Judgment on the pleadings is proper when the complaint is sufficient, none of its material allegations are denied and no affirmative matter alleged to defeat the action. (*Montana Min. Co.* v. *St. Louis Min. & Mill. Co.,* 23 Mont. 311, 58 Pac. 870.) For purpose of attack on a complaint for insufficiency, motion for judgment on the pleadings and objection to the introduction of evidence and a motion for nonsuit raise only such questions as arise upon a general demurrer. (*Daily* v. *Marshall,* 47 Mont. 377, 133 Pac. 681.) Judgment on the pleadings cannot be entered where there is an issue framed thereby. (*Moore* v. *Murray,* 30 Mont. 13, 75 Pac. 515.) In determining the right of a party to a judgment on the pleadings, the real question to be determined is the sufficiency of the admitted facts to warrant the judgment rendered and the materiality of those upon which issue is joined. A motion for judgment on the pleadings, based on the facts thereby conceded, cannot be sustained, except where, under such facts, a judgment different from that pronounced could not be rendered, notwithstanding any evidence which might be produced. In other words, it cannot be sustained unless, under the admitted facts, the moving party is entitled to judgment, without regard to what the findings might be on the facts upon which issue is joined. (15 R. C. L., sec. 13, p. 579.) Upon the sustaining of a demurrer to a pleading, the court always permits a reasonable time for amendment of the pleadings found deficient on demurrer. And a motion for

judgment on the pleadings is universally held to be in effect a demurrer. (31 Cyc. 606.)

As a general rule, an amendment to pleadings should be allowed at any stage of the proceedings, when it will not delay the suit nor affect the rights of the adverse party, and where the facts stated in the original and amended pleadings are substantially identical. Also the facts and surrounding circumstances which occasioned the necessity for amendment may be entitled to consideration, as, for example, the fact that counsel was in nowise negligent but prepared his answer from memoranda found among the papers of the deceased original counsel for his client. Following this rule judgments have been reversed because the trial court would not permit pleadings to be amended. (21 R. C. L., sec. 127, pp. 572, 575.)

This case had been set for trial and all preparations had been made for the trial, even to the taking of depositions, when the setting of the case was, by mutual consent, canceled. There was presented no question of a continuance or a delay of the trial of the case which might justify the court in refusing leave to file the amended answer. What the reasons of the court were for refusing leave to amend are left a matter of speculation and conjecture. It may be the court was of the opinion that the motion for leave to amend came too late, because of the serving on the defendant of plaintiff's motion for judgment on the pleadings. If this was the theory of the court, it certainly was erroneous. (See *Bryant* v. *Davis,* 22 Mont. 534, 57 Pac. 143; *Floyd* v. *Johnson,* 17 Mont. 469, 472, 43 Pac. 631.)

*Mr. James A. Walsh,* for Respondent, submitted a brief and argued the cause orally.

A person holding collateral security is not obliged to sell it, and he is not responsible if the collateral depreciates in value. If the maker of the note or owner of the collateral wants to have the collateral sold his remedy is plain,—that is, to pay the note, take the collateral and sell it, or dispose of it in any man-

ner he may wish. The authorities are all one way on this subject. (*Culver* v. *Wilkinson*, 145 U. S. 205, 36 L. Ed. 676, 12 Sup. Ct. Rep. 832 [see, also, Rose's U. S. Notes]; *Wilkinson* v. *Culver*, 33 Fed. 708; *Adoue and Lobit* v. *Hutches*, 32 Tex. Civ. 559, 75 S. W. 41; *First Nat. Bank* v. *Waddell*, 74 Ark. 241, 85 S. W. 417; *Lake* v. *Little Rock Trust Co.*, 77 Ark. 53, 7 Ann. Cas. 394, 3 L. R. A. (n. s.) 1199, 90 S. W. 848; *Howell* v. *Dimock*, 15 App. Div. 102, 44 N. Y. Supp. 271; *Newsome* v. *Davis*, 133 Mass. 343; *Franklin Sav. Inst.* v. *Preetorious*, 6 Mo. App. 470; *Henry Woods Sons Co.* v. *Schaefer*, 173 Mass. 443, 73 Am. St. Rep. 305, 53 N. E. 881; *Savannah Bank & Trust Co.* v. *Hartridge*, 73 Ga. 223; *Richardson* v. *Insurance Co.*, 27 Gratt. (Va.) 749; *Minneapolis & N. Elevator Co.* v. *Betcher*, 42 Minn. 210, 44 N. W. 5; *Furness* v. *Union Nat. Bank*, 147 Ill. 570, 35 N. E. 624; *Robinson* v. *Hurley*, 11 Iowa, 410, 79 Am. Dec. 497; *Cooper* v. *Simpson*, 41 Minn. 46, 16 Am. St. Rep. 667, 4 L. R. A. 194, 42 N. W. 601; *O'Neill* v. *Whigham*, 87 Pa. St. 394.)

The court did not err in denying the defendant's application to file the first amended answer. A replication had been filed to the first answer, and the time for amending the pleadings as of course, had passed. The fact that there is nothing in the answer requiring a denial does not change the attitude of the parties. A reply is an answer within the meaning of the Code. (*Seaman* v. *McClosky*, 23 Misc. Rep. 445, 53 N. Y. Supp. 554; *Holm* v. *Appleby*, 27 Misc. Rep. 49, 57 N. Y. Supp. 266; *Toomey* v. *Andrews*, 48 How. Pr. (N. Y.) 332.) A party has not unlimited time in which to file an amended pleading, as of course. If a party files an answer which does not require a reply, and no demurrer is filed thereto, he cannot thereafter, or, as in this case, more than two years after his answer was filed, claim the right to amend, or file an amended answer as of course. (*Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, 89 Pac. 1097.) And when there is a motion made for judgment on the pleadings, the opposing party has not the right to

amend his pleadings as of course. (*Cullen* v. *Western M. & W. Title Co.,* 47 Mont. 513, 134 Pac. 302.)

If a party has a right to amend a pleading as of course, and he applies to the court for leave to file the amended pleading, he thereby waives his right to file the amended pleading as of course. (*Hamilton* v. *Carrington,* 41 S. C. 385, 19 S. E. 616.)

It is said that a motion for judgment on the pleadings is in the nature of a demurrer. However, it is not a demurrer. Courts sometimes say that a motion for a nonsuit, or a motion for a directed verdict, is in the nature of a demurrer, but such motions are not demurrers, while partaking something of the nature of a demurrer. No court has ever said that such motions are demurrers. When such a motion is filed, a party has not an absolute right to amend his pleadings, nor has a party an absolute right to amend when a demurrer is overruled or sustained. (Rev. Codes, secs. 6591, 6594 and 6589.)

MR. JUSTICE COOPER delivered the opinion of the court.

By the note in suit, the defendant promised to pay at the office of the Northwestern Metals Company, in Philadelphia, Pa., to the order of himself the sum of $12,500. On the day of its execution—May 11, 1914—the maker indorsed and transferred it to the plaintiff, for value. As collateral security for its payment, and to meet any existing or future obligations between them, there was also delivered to plaintiff a note of the company named, in like amount, and 6,000 shares of its capital stock. The defendant on the back of the original note made a further written promise and agreement to this effect: Whenever the market value of the security thus pledged shall become insufficient to cover the entire obligations, "with twenty (20) per cent margin added thereto," the maker "upon demand" shall deposit with the holder additional security sufficient to cover "the amount and margin." In default of depositing the additional security, the principal note was to become due and payable; the right to liquidate the debt out of

a public or private sale of the property "without further order or authorizations" or the reservation to the maker of any benefit exemption or privilege in law, or otherwise, to attach immediately.

The original complaint in the action was filed June 19, 1916. The amended complaint was filed March 2, 1917. A demurrer, filed July 10, 1917, attacked its sufficiency because it did not appear therefrom by whom, or to whom, the 6,000 shares of stock were delivered; whether they were delivered as collateral; to whom the interest on the note was paid; whether the stock at the maturity of the note was of any value at all; why the stock was not sold at maturity of the note to satisfy the debt; whether the company was or was not insolvent, or why it became so; upon the further ground that it alleges that the collateral note given by the corporation was allowed in the bankruptcy proceedings, but does not aver why the principal note would not be paid out of the proceeds of the bankrupt's estate, nor why the lien cannot be foreclosed and the expense necessarily incurred therein will not amount to more than could be realized on the note. The demurrer was overruled, and the defendant, in his answer filed August 10, 1917, admitted the making of the note with the indorsements thereon; its transfer to plaintiff; his ownership thereof; the pledging of the collateral note and of the stock as additional collateral security; its present worthlessness; the payment of the interest; and that the metals company had been adjudged a bankrupt. He denied that the metals company was insolvent prior to the giving of the collateral note; that its assets, at a fair valuation, were insufficient to meet the indebtedness, and that the security did not become valueless through any fault or negligence of the plaintiff; that its collateral note could not be sold or collected, except to the extent of the proceeds from the assets of the bankrupt, or that proceedings cannot be prosecuted to foreclose the lien on the collateral note; and that the cost would exceed the amount that could be realized therefrom. As matters of affirmative defense, he alleges: That

the value of the stock at the date of its delivery was in excess
of $60,000; that had plaintiff sold it, the proceeds would have
been sufficient to liquidate the note and leave a surplus; but
that plaintiff wrongfully failed, neglected and refused to sell
or offer it for sale, and that the stock thereafter became value-
less and a total loss to defendant. As a second affirmative
defense, he further alleges: That the bankruptcy proceedings
are still pending; that substantial payments will still be made
upon the claim of plaintiff if proved in the bankruptcy pro-
ceedings, and credited on the note. By way of cross-complaint
and counterclaim, the execution, indorsement, and delivery of
the note to plaintiff are affirmed. He alleges that the stock
was of greater value August 11, 1914, than the amount of the
note; that had the plaintiff, at maturity, or within a reason-
able time thereafter, sold the stock and applied the proceeds
on the note, they would have been sufficient to have liquidated
the note in full and left a surplus, but because of his wrong-
ful refusal and neglect so to do, the note became worthless.

On August 31, 1917, the plaintiff replied, denying all the af-
firmative matters alleged. On January 15, 1919, the plaintiff
was allowed, without objection, to file a supplemental com-
plaint, averring that $1,397.59 had been realized from a sale
of all the property of the corporation, in bankruptcy proceed-
ings, and applied upon the note in suit. This pleading, stand-
ing unanswered, removed all the issues of fact.

On September 9, 1919, the court set the cause for trial October
18. On October 15, by consent of the parties, the setting was va-
cated. On October 20, the plaintiff served upon defendant his
notice of motion for judgment on the pleadings, stating that he
tendered therewith "the worthless receipt for the worthless
stock" described in the complaint, "the only evidence of said
stock received by the plaintiff," and that he "deposited in
court for the use and benefit of the defendant and subject to
his order, the worthless note of the Northwestern Metals
Company." On October 21, plaintiff served his second notice
of motion for judgment on the pleadings. On October 24, the

defendant asked leave to file an amended answer. On October 27, the plaintiff filed both motions for judgment on the pleadings, contending that no facts sufficient to constitute a defense or counterclaim were set forth in the answer, for the reason that it affirmatively appears that the facts stated in the amended complaint are true, and that the defendant is indebted to plaintiff in the amount named therein, less the amount named in the supplemental complaint. The motions, as well as the application of defendant for leave to file an amended answer, were considered at the same time. To support the application, the Honorable Albert J. Galen, now a member of this court, gave oral testimony to the effect that as a member of the law firm of Galen & Mettler he was employed as one of the attorneys for the defendant in the action; that during most of the time since the action was commenced the defendant was not in the state of Montana; that defendant was apprised of the commencement of the action, and instructed his firm to appear for him therein; that after the demurrer to the complaint had been overruled he prepared from his best recollection of the facts gathered from correspondence and personal statements made to him by defendant an answer showing the nature of the transaction, and filed it in August, 1917; that the answer was prepared at a time when he was busy as a member of the committee in charge of the administration of the Selective Draft Law; that on October 8, when the cause was set for trial, counsel for plaintiff stated that he desired to take the depositions of certain witnesses; that in response thereto Judge Galen stated that until he had conferred with Hewitt, who was not then in the city, he was not sufficiently familiar with the facts in the case to prepare cross-interrogatories for the depositions so to be taken; that by consent of the parties, the setting of the case for that date was canceled and placed at the foot of the trial calendar; that Mr. Walsh, being desirous of taking the deposition of the defendant in advance of taking the other depositions, made a request over the telephone that the taking of the depositions

be continued until some date later to be mutually agreed upon; to this the witness assented. The defendant some days thereafter gave to his attorneys a full statement of the facts upon which he based his defense, and the proposed answer was prepared upon information thus imparted. He further testified that "If any error or mistake has been made in the first attempt to set forth the defense on Mr. Hewitt's behalf it was solely and alone through misunderstanding of counsel and their inability to get into communication with the defendant Hewitt. The amended answer as now proposed sets forth the defense as explained to me by Mr. Hewitt."

. On cross-examination he testified that he prepared the amended answer on information obtained from defendant; that to the best of his recollection defendant had not been in Helena more than twice since his return to Helena in August, 1919; that before the witness left Helena, in January, 1918, to go into the army service, and after the copy of the summons and complaint in the action were handed to him by the defendant, he had not seen Hewitt more than once; that he did not remember whether he conferred with his client by letter or how it came about; that he would not be sure whether he got any of the information by letter or how; that he would have to look through his letter files to determine that question. He further stated that he had no information relative to the facts set up in the proposed answer as a defense, until Hewitt came to Helena for the purpose of giving his deposition.

At the close of the evidence in support of the motion for leave to file the amended answer, the court ruled against the defendant, and ordered judgment upon the pleadings.

The defendant insists that in overruling the demurrer to the amended complaint, in denying leave to file the amended answer, in sustaining the motion for judgment on the pleadings, and in refusing to open the default, the court erred.

The appeal being from the judgment alone, our inquiry does [1] not extend to matters occurring after its rendition, al-

though they are embodied in a bill of exceptions appearing in the record. (*Canning* v. *Fried*, 48 Mont. 560, 139 Pac. 448.)

The assignments of error present but two questions: (1) Was the plaintiff derelict in failing to sell the collateral security at the maturity of the note? (2) Was the defendant excusably negligent in failing to inform his attorneys of the facts necessary to his defense?

1. If the plaintiff was remiss in not selling the collateral [2] security and discharging the indebtedness evidenced by the note, he must be held so because he failed to meet some requirement imposed upon him by the writing. According to its plain meaning, the collateral security was applicable to the payment of the note; and, upon default, the holder was authorized to sell it and to become the purchaser and the owner thereof. This was the limit of its effect. Upon the strength of the promises and the collateral security, the plaintiff was induced to hand over to the defendant $12,500. As a means of getting it back, it was his privilege—not his duty—to sell the securities and apply the proceeds upon the original note. The collateral afforded him an additional remedy, but it did not supersede his right to proceed against the pledgor personally, without a sale. (*Granite Bank* v. *Richardson*, 7 Met. (Mass.) 407.) The time and place at which the note was to be paid were fixed in the writing, and, in case of default, it pointed out to the plaintiff the way he might, if he chose, discharge the defendant's obligation for him; but it did not oblige him to accept one or the other of the two alternatives. Its language is permissive merely in no sense obligatory. (*Lake* v. *Little Rock Trust Co.*, 77 Ark. 53, 7 Ann. Cas. 394, 3 L. R. A. (n. s.) 1199, 90 S. W. 848; *Robinson* v. *Hurley*, 11 Iowa, 410, 79 Am. Dec. 497; *Granite Bank* v. *Richardson*, *supra;* Jones on Pledges, sec. 606; *Culver* v. *Wilkinson*, 145 U. S. 205, 36 L. Ed. 676, 12 Sup. Ct. Rep. 832 [see, also, Rose's U. S. Notes].) "A postponement of the exercise of the right is a thing of which the debtor cannot complain; it only enlarges his opportunity to redeem and thereby prevent any

sacrifice which might result from a forced sale of the pledge."
(*Robinson* v. *Hurley, supra.*) In this situation, we know of
no law by which the plaintiff could have been compelled to sell
the securities to pay off the note, as defendant contends.

The complaint alleges the execution of the note, its delivery,
[3] default in its payment, the worthlessness of the note as
well as the stock pledged, and the failure of the defendant to
pay. The fact that the company was declared insolvent in the
bankruptcy court, and that the amount indorsed upon the
principal note was the sum of all its assets, is not controverted.
Conceding that judgment cannot be rendered upon pleadings
which raise a substantial issue of fact (*Moore* v. *Murray,* 30
Mont. 13, 75 Pac. 515; *Reed* v. *Rogers,* 19 N. M. 177, 141 Pac.
611), what material issue do the pleadings present? The
charge in the answer and counterclaim is that had the plain-
tiff sold the securities pledged, the proceeds would have been
sufficient to liquidate the note, and to have left a surplus, but
that he wrongfully and negligently refused to sell them. It
is true that it is essential that a counterclaim allege a cause
of action in favor of defendant and against the plaintiff. The
averment that the payee was "authorized" to sell the pledge,
however, as we have seen, did not necessarily require him to do
so, nor did anything contained in the writing. It is there-
fore very clear that the plaintiff is not liable for any deprecia-
tion in the value of the stock, if any there was. (*Lake* v.
*Little Rock Trust Co., supra.*)

2. Upon the second point, Judge Galen's evidence is that
[4] upon information obtained from the defendant he prepared
the answer which was filed August 13, 1917. His testimony is
as follows: "As to when he told me this note of the North-
western Metals Company was given August 14, 1914, in payment
of the other note, I know he told me so a week ago Satur-
day, when he was here for the purpose of giving his deposi-
tion. If I ever had been given the information before, I have
no recollection of it now, and it would appear I did not have
the information, otherwise it would have been embraced in the

amended answer heretofore filed. I had no information on this that I could recall until Mr. Hewitt was here for the purpose of giving his deposition. \* \* \* The letter files of correspondence that we had with Mr. Hewitt while he was in the East in 1916 and 1917 was very little; there were more letters written than there were letters received; either we were unable to get his correct address or else he did not answer letters; I don't know which. I don't remember that I had a conversation with Mr. Hewitt before I prepared his answer in August, 1917, as to the facts. \* \* \* It was a week ago Saturday that Mr. Hewitt gave me the first information, as I now recall it; it seems to me it was a week ago Saturday; it certainly was in the last ten days. \* \* \* I welcomed the taking of the deposition so as to get personal first-hand information from him as to what the facts were." By the persistent efforts of his counsel, the defendant was kept out of default from the time the summons was served upon him until within ten days of the hearing, a period of something like two years and three months. Letters mailed to him at his addresses were neither answered nor returned to his counsel. Indeed, all efforts upon their part to secure the necessary information remained fruitless until shortly before the trial. There is not a single fact in the record upon which the trial court could predicate a finding of excusable neglect, and nothing to call into exercise the legal discretion vested in it. (*Hinderager* v. *MacGinniss,* 61 Mont. 312, 202 Pac. 200.)

The judgment appealed from is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.

MR. JUSTICE GALEN, being disqualified, takes no part in this decision.

Rehearing denied July 10, 1922.