SHIPMAN, Appellant, *v.* TERRILL et al., Respondents.

(No. 6,431.)

(Submitted February 15, 1929.   Decided March 13, 1929.)

[276 Pac. 21.]

*Mr. William M. Blackford,* for Appellant, submitted a brief and argued the cause orally.

324

*Mr. C. W. Buntin,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was commenced December 12, 1924, to foreclose a mortgage on real estate. Service was had on the defendants, other than James Bland Cattlett, by publication. The latter was served and appeared by answer, and the other defendants defaulted. The cause was tried before the court on February 23, 1927, without a jury, after the conclusion of which, on May 1, 1928, a decree of foreclosure and sale was regularly entered expressly absolving the defendant James Bland Cattlett from liability to pay any deficiency in the event that upon sale of the property sufficient money was not realized to satisfy the judgment. The plaintiff has appealed from that portion of the judgment.

We cannot understand why disposition of this case was so long delayed in the district court. The delay shown does not seem justifiable. Although the action was commenced in 1924, it was not brought on for trial until 1927, and then it took the court more than a year to render its decision. Such delays should not be countenanced.

The only question presented by the specifications of error necessary to a decision of the appeal is whether the plaintiff is legally entitled to a deficiency judgment against the defendant Cattlett, respondent here. The district court found that the respondent never requested the plaintiff, after the maturity of the mortgage, or at all, to foreclose it, and that the plaintiff, after the maturity of the mortgage indebtedness, agreed with C. E. Porter, a son of the defendant Eliza M. Porter, as agent for the latter, to extend the payment of the indebtedness from the eleventh day of May, 1923, to the eleventh day of May, 1924, "and as a consideration therefor the defendant Eliza M. Porter did agree to and with the plaintiff * * * to pay ten per cent. interest from the 11th day of May, 1923, to the 11th day of May, 1924, instead of the 8 per cent. interest per annum as provided by the terms of the said note; that the defendant James Bland Cattlett was not advised of the extension of time," so granted to the defendant Eliza M. Porter, "and that he was wholly ignorant and entirely innocent of any extension of time of payment; that the said extension of payment was founded on a valid consideration; that during the period of said extension of time the property described in the complaint of the plaintiff * * * greatly depreciated in value, and taxes were permitted to go delinquent and remain wholly unpaid; and that the defendant James Bland Cattlett was materially damaged thereby."

In consequence the court concluded as a matter of law, that "Eliza M. Porter, through the assumption of the mortgage indebtedness and the agreement to pay the same as contained in the deed of conveyance to her from the defendant James Bland Cattlett, became the principal debtor, and the defendant James Bland Cattlett became her surety for the payment of the same; that by reason of the extension of the time of payment of the said first mortgage note, and the said coupon note No. 10, from the 11th day of May, 1923, to the 11th day of May, 1924," the plaintiff for a good and valid consideration was estopped during such period, to wit, May

11, 1923, to May 11, 1924, from foreclosing the mortgage, and that such estoppel ran against the respondent, thereby preventing him from foreclosing the same; that by reason of the extension of the time of payment of said first mortgage note and interest coupon note No. 10, as the same are described in the plaintiff's complaint filed herein, and by reason of the depreciation in the value of said property and of the accumulation of taxes thereon, all of which was without the knowledge or consent'' of the respondent, he, as surety for the payment of said principal debt, was materially injured and thereby ''completely released from any and all obligation as such surety; and that the plaintiff is not entitled to any deficiency judgment against the defendant James Bland Cattlett, as such surety, in the event any deficiency should remain.''

It appears that the property mortgaged was, at the time of the execution of the mortgage on May 11, 1918, owned by William D. Rose and Ethel A. Rose, and that the mortgage was by them given to the plaintiff as security for the payment of an indebtedness of $2,500, represented by a promissory note payable on May 11, 1923, without grace, at the Lewistown State Bank of Lewistown, bearing interest at the rate of eight per cent per annum, payable semi-annually, according to the terms of ten coupon notes of even date attached, all of which provided for interest after maturity at the rate of ten per cent per annum. Interest on the principal obligation evidenced by coupon notes numbered 1 to 9, inclusive, has been paid. Interest coupon note No. 10 became due and payable on May 11, 1923, as did also the principal indebtedness, but neither was paid. On or about July 8, 1919, Rose and wife sold and conveyed the mortgaged property to the defendant Nettie M. Terrill, who by the conveyance assumed and agreed to pay the mortgage indebtedness. Nettie M. Terrill afterwards, on December 4, 1920, conveyed the property to the defendant James Bland Cattlett, who also accepted transfer of the property, assuming the payment of the mortgage indebtedness; and afterwards, on December 19, 1921, Cattlett

made like conveyance of the property to the defendant Eliza M. Porter, who in turn assumed the payment of the mortgage debt.

The respondent pleaded in defense a disclaimer of liability to pay any deficiency judgment, because of the plaintiff's laches for failure to use due diligence in commencing action to foreclose the mortgage after it became due, May 11, 1923, and for the reason that the plaintiff had granted the defendant Eliza M. Porter, the title holder, an extension of time within which to pay the mortgage debt.

In defense, Charles E. Porter testified that, as agent for his mother, the defendant Eliza M. Porter, he had an oral understanding and agreement with the plaintiff, about thirty days after the latter returned from Vermont (Shipman testified that he returned from Vermont about July 20, 1923), that the plaintiff would extend the date of the maturity of the mortgage note one year, and that his mother should pay ten per cent interest in place of the rate named in the note, which he thought was eight per cent. Roy W. Hanley testified as a witness for respondent that he had a conversation with the plaintiff in Lewistown in the summer of 1924, in which the plaintiff told the witness "he had extended the mortgage for a year to Charlie Porter, * * * and now that time was nearly up, or was up, I forgot which. * * * He said he had given them another year from the date originally due."

The respondent testified that he was first advised that the plaintiff had extended the time to defendant Eliza M. Porter to pay the mortgage indebtedness when the deposition of Charles E. Porter taken in the case was read. He further testified that he first met the plaintiff in the summer of 1924, and at that time "Mr. Shipman told me that Eliza M. Porter, or Charlie Porter, hadn't paid the note, and mortgage, when it came due, and it was now past a year due, and he intended to look to me for payment, and I told him I was of the opinion that Eliza M. Porter didn't want this property to be foreclosed, and that, if he would write Eliza M. Porter or Charlie

Porter, I was of the opinion they would pay the note and interest, and he asked me at that time where he could get in touch with them. I believe at that time he said he had written to Eliza Porter, but got no reply, and had been trying to find out where she was, and after he wrote to Eliza M. Porter—that was in the summer of 1924, and it was some time after that when he got no reply from Eliza M. Porter, or Charles E. Porter, and he said he looked to me for it. Q. Could you fix it by any particular date? A. Well I would say this; I know it was a year after the note became due—the mortgage became due. It was in the summer, and it was a matter of no paramount importance to me at the time, and just exactly when it was I don't remember; but I do know it was after it had become due, and I wondered why I had not been notified why it was past due.''

No interest has been paid on the indebtedness since the payment of interest coupon No. 9; taxes on the property were permitted to become delinquent for the years 1921 to 1925, and whatever income there was from it was collected by Mrs. Porter up to the time of the commencement of this action, since which time the rentals, amounting to $25 per month, have been collected from the tenant in possession by a receiver duly appointed. No request was ever made by the respondent upon the mortgagee to foreclose the mortgage. There is sharp conflict in the evidence as to whether the plaintiff ever in fact agreed to extend payment of the mortgage debt. The plaintiff testified that the only reason he did not proceed more promptly to foreclose the mortgage after its maturity was that ''it didn't look to be just the time to crowd people. * * * No loans could be renewed, and I wanted to give them a chance.''

''The assumption of the mortgage by the grantee of the mortgaged premises does not deprive the mortgagee of any rights or remedies he possessed against the mortgagor, or relieve the latter from liability for the debt secured, or any part thereof still unpaid, unless the mortgagee has expressly

agreed to release him and to accept the grantee as his debtor in place of the mortgagor." (41 C. J., p. 733.)

And the rule is that, "as between each other with relation to the mortgage debt, the purchaser of mortgaged land, who assumes and agrees to pay the debt, becomes the principal debtor, and the mortgagor or grantor is in the position of a surety." (41 C. J., p. 737; 18 Cal. Jur., sec. 379, under subject "Mortgages"; Jones on Mortgages, 8th ed., sec. 1261.) The purchaser thus becomes primarily liable for the payment of the debt, and the grantor a surety. (Jones on Mortgages, 8th ed., secs. 917, 920.)

The grantee of a mortgagor, who expressly agrees to pay the mortgage on the property purchased, thereby also assumes a contingent personal liability to pay a deficiency judgment in case the property fails to sell for an amount sufficient to discharge the debt and costs incurred. (*Kinyon Inv. Co.* v. *Belmont State Bank,* 69 Mont. 282, 221 Pac. 286.) The purchaser becomes liable for the debt to the mortgagee or his assigns, who, under the rule of equitable subrogation, may enforce the liability in an action against the purchaser to foreclose the mortgage, and therein the latter obligation is measured by the terms of the mortgage; but the assumption of the debt does not deprive the mortgagee of any remedy he might have had against the mortgagor, or his grantee, and therefore he may proceed against the mortgagor, the grantees, or all of them. (*Murray* v. *Creese,* 80 Mont. 453, 260 Pac. 1051.)

"When a grantee of a mortgagor takes real property subject to a mortgage, and agrees to pay such indebtedness, as between the parties he becomes in law the primary or principal debtor of the mortgagee, while the mortgagor occupies the relation of surety. The grantee becomes a principal and controlling party to the obligation, but both are personally liable for the debt, and the mortgagee may treat both as principal debtors, and may have a personal decree against both. The doctrines concerning suretyship must control the dealings between them, the case being precisely the same as any other

contract to pay money executed by two persons, where one is surety for the other and the creditor is aware of that relation. Consequently, any contract or arrangement between the purchaser and the mortgagee, which has the effect of materially altering the terms of the obligation to pay the mortgage debt, operates to release the surety unless he consents thereto. Such, for instance, is the effect of an extension of time from the mortgagee to the grantee without the consent of the grantor." (18 C. J., p. 57, sec. 375.)

"A purchaser having assumed the payment of an existing mortgage, and thereby become the principal debtor, and the mortgagor and his grantees merely sureties, an extension of the time of the payment of the mortgage by an agreement made upon a valid consideration between the holder of it and the purchaser, without the concurrence of the mortgagor or his grantee, discharges them from all liability. In such a case the liability of the mortgagor and his grantees is extinguished." (Jones on Mortgages, 8th ed., sec. 922.)

The mere passivity of the creditor in enforcing payment of the debt does not discharge the surety. (*Hefferlin* v. *Krieger,* 19 Mont. 123, 47 Pac. 638; *Smith* v. *Freyler,* 4 Mont. 489, 47 Am. Rep. 358, 1 Pac. 214.) The surety's remedy is to pay the note, and himself sue the principal debtor. (*Hefferlin* v. *Krieger,* supra; *Smith* v. *Freyler,* supra.) So long as the action is brought within the period of the statute of limitations, the surety will not be heard to complain because of the failure of the mortgagee to begin foreclosure action at an earlier date. (*United States Nat. Bank* v. *Shupak,* 54 Mont. 542, 172 Pac. 324; *Newcomb* v. *Hale,* 90 N. Y. 326, 43 Am. Rep. 173; *Wiener* v. *Boehm,* 126 App. Div. 703, 111 N. Y. Supp. 126.) Mere forbearance to foreclose a mortgage is no defense, even if more would have been realized, had action been more promptly taken. (*Hale* v. *Forbis,* 3 Mont. 395; *Grant* v. *Hewitt,* 63 Mont. 422, 208 Pac. 887; 41 C. J. 720.)

The evidence, although conflicting, supports the court's finding that the plaintiff agreed to extend the period

of maturity of the debt for one year without respondent's knowledge, and this brings us to a consideration of the determinative question presented in disposition of the appeal, viz.: Was there sufficient consideration for the extension agreement? If there was sufficient consideration for the plaintiff's promise, then the respondent, as surety, was released from liability.

Section 7503 of the Revised Codes of 1921 provides: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Here the benefit agreed to be conferred upon the promisor (Mrs. Porter) was the extension of the time for payment of the debt for one year, to which she was not lawfully entitled, and the prejudice agreed to be suffered by the plaintiff, other than that fixed by law, at the time of the agreement, as an inducement to the promisor, was delay in receiving payment of the amount due. Applying the language of the statute, the consideration would appear to be sufficient. "When a debtor and creditor agree that an interest-bearing debt shall be extended for a fixed time, the promise of each is of something detrimental, as the creditor promises to forbear the collection of his claim, and the debtor gives up his right to stop the accrual of further interest by the payment of the principal at maturity." (1 Williston on Contracts, p. 264.) It is the general rule that an agreement to pay interest to accrue in the future, during the time extended, or for a fixed time, is sufficient consideration. (8 C. J. 438, 439.)

In the recent work (1928) published by the American Law Institute, "Restatement of the Law of Contracts," p. 92, the following illustration of a good consideration, applicable here, is given as follows: "A owes B a matured liquidated debt bearing interest. Mutual promises to extend the debt for a year are binding, though the rate of interest is below that which the law allows on overdue debts for which no interest has been

contracted. A might have paid the debt and altogether prevented B from acquiring a right to interest.'' And an oral contract to extend the time of payment of a promissory note, when based on a consideration, is everywhere held binding. A promise which imposes a legal liability, and which is definite and certain, is a sufficient consideration for another like promise, and when there is a promise to keep money for a specified time, and to pay interest on the same for the time it is kept, such a promise is binding. (8 C. J., p. 429; *Lahn* v. *Koep,* 139 Iowa, 349, 52 L. R. A. (n. s.) 327, 115 N. W. 877.)

''A promise to do what one is not bound to do, or to forbear what one is not bound to forbear, is a good consideration for a contract. In case of a debt, which bears interest either by convention or by operation of law, when an extension for a definite period is agreed upon by the parties thereto, the contract is that the creditor will forbear suit during the time of the extension, and the debtor foregoes his right to pay the debt before the end of that time. The latter secures the benefit of the forbearance; the former secures an interest-bearing investment for a definite period of time. One gives up his right to sue for a period, in consideration of a promise to pay interest during the whole of the time; the other relinquishes his right to pay during the same period, in consideration of the promise of forbearance. * * * It seems to us it would be a binding contract, even if the agreement were that the debt should be extended at a reduced rate of interest.'' (*Benson* v. *Phipps,* 87 Tex. 578, 47 Am. St. Rep. 128, 29 S. W. 1061.)

If, after a debt bearing interest becomes due, the creditor agrees to extend the time of payment for a definite period, and the principal agrees to pay the same rate of interest the debt would otherwise bear for that time, it seems the better opinion that the surety is thereby discharged, unless he consents thereto. The reasoning upon which this rule is founded has been thus well expressed: ''It is a valuable right to have money placed at interest, and it is a valuable right to

have the privilege at any time of getting rid of the payment of interest by discharging the principal. By this contract the right to interest is secured for a given period, and the right to pay off the principal and get rid of paying the interest is also relinquished for such a period. Here, then, are all the elements of a binding contract."

Notwithstanding this reasoning seems invincible, the contrary has been repeatedly held; the ground upon which these decisions is founded being that the promise of the principal to pay interest for the extended period creates no additional obligation upon him, as he would have been obliged to pay the interest without any new agreement, if the time had been given. This, however, ignores the fact that, if there is no new agreement, the debtor may at any time pay the debt and stop the interest. (Brandt on Suretyship and Guaranty, 3d ed., vol. 1, sec. 388.) The early case of *Hale* v. *Forbis*, 3 Mont. 395, is hereby expressly overruled in so far as in conflict with our views herein expressed.

The weight of authority supports the proposition that if the mortgagee, with knowledge of the conveyance of the property and assumption by the grantee of the mortgage debt, extends the time of payment by a valid agreement between him and the grantee, such extension operates to discharge the original mortgagor, or intermediate grantee, who may likewise have assumed the mortgage, unless such extension is assented to by the mortgagor or intermediate grantee, or unless the rights of the mortgagee against such parties are expressly reserved. (41 A. L. R. 282, and numerous cases cited therein.)

And under the express provisions of our statute "a guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any wise impaired or suspended." (Section 8188, Rev. Codes 1921.)

And the same rule is made applicable to a surety.   (Id., sec. 8202.)

For the reasons stated, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.

Rehearing denied April 13, 1929.