UNITED STATES BUILDING & LOAN ASSOCIATION, Respondent, v. BURNS, Appellant; BILLREL COMPANY, Inc., et al., Respondents.

(No. 6,801.)

(Submitted September 14, 1931. Decided October 10, 1931.)

[4 Pac. (2d) 703.]

404

Messrs. *Brown, Wiggenhorn & Davis*, Mr. *Roy F. Allan* and Mr. *John F. McGough*, for Appellant, submitted a brief; Mr. *Horace S. Davis* argued the cause orally.

*Messrs. Emigh & Maury,* for Respondent Building & Loan Association, submitted a brief; *Mr. J. F. Emigh* argued the cause orally.

410

412

415

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

We hold that the note, mortgage and assignment of rents and revenues, were constituent parts of one transaction.

Upon the facts that is so, and no refinement of argument can make it otherwise. The statute says that several contracts relating to the same matter, and made as parts substantially of one transaction, are to be taken together. (Sec. 7533, Rev. Codes 1921.) And, as the parts of this transaction referred to above, are to be taken together, they must be considered together for all purposes. (*United States Nat. Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084; *Cooper* v. *Goble*, 77 Mont. 580, 252 Pac. 362.)

We then come to the determinative question: Was defendant discharged from personal liability by the agreement entered into by plaintiff and Mains, of date November 28, 1925?

On that date Mains was the principal, and Burns a surety only for the payment of the debt due plaintiff. (*Shipman* v. *Terrill*, 84 Mont. 322, 276 Pac. 21; *Kenyon Inv. Co.* v. *Belmont State Bank*, 69 Mont. 282, 221 Pac. 286.) A surety has all the rights of a guarantor, whether he becomes personally responsible or not. (Sec. 8202, Rev. Codes 1921.)

Section 8201 provides that a surety is exonerated: "1. In like manner with a guarantor; 2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or, 3. To the extent to which he is prejudiced by any omission of the creditor to do anything, when required by the surety, which it is his duty to do."

Section 8188, relating to the exoneration of a guarantor, which for convenience we divide into divisions (a) and (b), is as follows: "(a) A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, (b) or the remedies or rights of the creditor against the principal, in any respect thereto, in any wise impaired or suspended."

These sections are crystallizations of common-law principles, to and from which the codifiers did not add nor detract.

They appear in Field's Civil Code as sections 1565, 1564 and 1551. California borrowed them from the Field Code and we borrowed them from California. The rules of interpretation governing the application of these well-known principles have been determined by time and experience, and, with an exception here and there, have been stated with precision by the jurists and text-writers. The common-law rules of interpretation, therefore, are to be followed where the statute has gone no further than to crystallize common-law principles. We are holding fast to that which had proved good.

An analysis of the foregoing sections may prove useful. ▮ Subdivision 1, which by reference includes section 8188, covers defenses which are not comprehended by either subdivision 2 or subdivision 3. That part of section 8188 which we have designated (a) deals with a legal defense as distinct from one that is equitable in its origin. For example, if a creditor changes the date of a note the surety has a defense, whether he will be prejudiced or not; his defense is that the changed note is not his contract. That part which is designated (b) has to do with cases where, strictly speaking, there may not be an alteration of the instrument itself. Suppose, for example, that a man has guaranteed a negotiable note. If the creditor makes a collateral contract with the principal debtor, extending the time of payment, without the consent of the guarantor, the latter has a defense, although at law the original obligation of the principal, that is, the debt, stands unaltered; the contract extending the time of payment would, however, impair or suspend the rights of the creditor with respect thereto. If there is no consideration for the collateral promise to extend the time of payment it is not binding and, therefore, cannot impair or suspend the rights of the creditor. This principle is recognized in section 8189.

Section 8188 deals with alterations of contracts, and collateral contracts which cripple the right of subrogation. Subdivision 2 of section 8201 has to do with "any act" of the creditor with respect to the obligation that would "naturally prove

injurious to the remedies of the surety." It bears a close kinship to that part of section 8188 designated (b) with respect to the right of subrogation but does not invariably cover the same subject matter; it is complementary to section 8188. As illustrative see: *General Steam Nav. Co.* v. *Rolt,* 6 Com. B. (n. s.) 550; *Calvert* v. *London Dock Co.,* 2 Keen, 638; *County of Glenn* v. *Jones,* 146 Cal. 518, 80 Pac. 695; 50 C. J. 165, cases under 69.

Contrary to what we have just said is the argument of counsel for plaintiff, based upon the case of *National Surety Co.* v. *Lincoln County,* 238 Fed. 705, 711, that subdivisions 2 and 3 are controlling over subdivision 1. The opinion in that case so holds upon the assumption that this court said so in *Dodd* v. *Vucovich,* 38 Mont. 188, 99 Pac. 296. But *Dodd* v. *Vucovich* does not say so, and neither does it say that the rule that a compensated surety must show injury "by reason of the alteration of the terms of the contract before it can be discharged from its liability" applies to all sureties, whether compensated or not. In *Dodd* v. *Vucovich* this court held that under the circumstances the surety did not and could not show that the alteration of the contract had been to his prejudice, and therefore neither subdivision 2 nor 3 was applicable. Touching the application of subdivision 1 (section 8188) the court said that had the contract changing the terms of the obligation been valid, the surety would have been released, but as there was no consideration for the contract it was not valid and, hence, did not serve to discharge the surety (sec. 8189). The court recognized an ancient rule,—"A valid agreement made between the creditor and principal debtor, without the assent of the surety, by which the rights or remedies of the latter are in any way changed or delayed, will operate to discharge him though not apparently prejudicial to his interest." (*Bangs* v. *Strong,* 7 Hill (N. Y.), 250, 42 Am. Dec. 64.)

Upon his principal's default the surety was at liberty at any time to pay the debt and be subrogated to all the rights of the creditor and all securities in the creditor's hands.

(*Schroepel* v. *Shaw*, 5 Barb. (N. Y.) 580; *Asbell* v. *Marshall B. & L. Assn.*, 156 Md. 106, 143 Atl. 715.) That giving time by a valid and binding agreement by the creditor to the debtor without the assent of the surety, operates to discharge him, is a well-established principle, and one fully recognized by this court in the comparatively recent case of *Shipman* v. *Terrill*, above. The underlying reason, applicable to conditions in the case now here for consideration, is, as expressed by Mr. Justice Nelson, in *Gahn* v. *Niemcewicz*, 11 Wend. (N. Y.) 312, "that the contract between the parties is varied, and the risk of the surety enhanced, because during the period of indulgence given, the latter cannot go into a court of equity to compel the creditor to collect the debt, nor by paying the debt and taking an assignment of the security, immediately proceed to the collection himself."

On its face the agreement of November 28 materially altered the original obligation contained in the note, mortgage and assignment of rents. Under the terms thereof the mortgagor was bound to pay the sum of $351.39 monthly and to pay the taxes when due; the mortgagee was entitled to the gross revenue from the mortgaged property (but only if the mortgagor failed in his obligation); the mortgagee was authorized to pay the taxes if the mortgagor did not, the payment being secured by the mortgaged property, and the mortgagee was entitled to interest thereon at twelve per cent. per annum.

By the November 28 agreement, Mains, who stood in the mortgagor's shoes, was excused from the obligation of paying the full sum of $351.39 per month, and the mortgagee gave up its right to receive the gross revenues from the property; Mains was given the privilege of deducting the operating expenses from the gross receipts, being obliged to pay over only the remainder, and he was allowed to pay as little as $200 per month. The mortgagee waived the default in the payment of the 1924 taxes, and extended the time for the payment thereof for two years. And, as will be referred to later, plaintiff in effect waived the right to foreclose the mortgage, for the time at least, because of the defaults of

Mains in failing to pay a number of monthly installments of rent.

Upon the foregoing facts it is idle to say that the November 28 agreement, if valid, did not materially alter the original obligation.

But plaintiff's counsel argues that the agreement is void as being in contravention of section 8230, Revised Codes 1921, which provides: "All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void."

Plaintiff did not plead the illegality of the contract in the court below. On the contrary its counsel treated it as valid, pleading that it was beneficial to defendant. The case was tried and decided upon the theory that the contract was valid and binding. Under the well-known rule counsel ought not now to present a different theory from that upon which he tried the case in the court below. "The rule is settled in this jurisdiction that when a party has adopted one theory upon the trial of his case he may not change the theory on appeal. (*Gay* v. *Lavina State Bank,* 61 Mont. 449, 18 A. L. R. 1204, 202 Pac. 753.)" (*O'Hanlon* v. *Ruby Gulch M. Co.,* 64 Mont. 318, 209 Pac. 1062; *Patterson* v. *Law,* 78 Mont. 221, 254 Pac. 412.)

Conceding, however, that as the stipulation respecting the giving of a deed is in contravention of public policy and that the court should consider the argument now made for the first time, the result is the same. Treating the stipulation for a good and sufficient deed (which under the circumstances contemplated a termination of Mains' rights in the property) as violating section 8230, supra, it will be seen that the stipulation is interwoven with and inseparable from the provisions respecting the rents and profits. The question then arises whether the void stipulation vitiates the entire agreement; it does unless the agreement is severable, and to this inquiry we direct our attention.

Section 7506, Revised Codes of 1921, provides: "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." It is said in *Hughes* v. *Mullins*, 36 Mont. 267, 13 Ann. Cas. 209, 92 Pac. 758, quoting 2 Parsons on Contracts, eighth edition, page 17: "If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the others is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." (And see *Mattison* v. *Connerly*, 46 Mont. 103, 126 Pac. 851; *Purdin* v. *Westwood Ranch & Livestock Co.*, 67 Mont. 553, 216 Pac. 326.)

The first paragraph of the agreement deals with the delinquent tax for the year 1924, and the tax for 1925, one-half of which was payable on or before November 30 (but two days remained for that payment without penalty). The second part relates to the disposition of the rents and profits from the building, and, as has been demonstrated, is specifically designed to modify the original obligation. The first part of the contract has no necessary relation to the second, nor has the second to the first. While it is argued by counsel for plaintiff that there is not any consideration for the agreement (although there is no plea on that score), there is ample consideration for that part which relates to the taxes (*Shipman* v. *Terrill,* supra), and this without reference to the second part.

Without the second part of the agreement being considered, did the first part operate to discharge the surety? We think it did. Plaintiff would have been fully within its rights had it paid the 1924 taxes; and within its rights if it had withheld foreclosure; it had the right to forbear. (*Shipman* v. *Terrill,* supra.) But when it entered into the agreement of November 28 it suspended its right to foreclose because of that default for a period of two years. It must be supposed that the agreement respecting the taxes contemplated a forbearance as to Mains' various defaults, at least until another default. It certainly was not intended upon the execution of the agree-

ment respecting the taxes, that plaintiff would or could proceed with foreclosure on account of defaults then existing respecting the monthly installments.

The mortgagee then being prevented from enforcing the payment of the mortgage debt because of the tax delinquency (and, tacitly at least, because of the installment delinquencies) defendant was likewise prevented, as his rights were no greater than those of the plaintiff. (*Asbell* v. *Marshall B. & L. Assn.,* supra.)

It is clear, then, that without the surety's consent, the original obligation of the principal was altered, and the remedies and rights of the creditor against Mains, the principal, in respect thereto were suspended. This discharged the surety. (*Vinson* v. *Pelletier,* 78 Mont. 254, 255 Pac. 1067.)

The argument that the delay was inconsequential cannot be sustained. "The creditor must be in such a situation that when the surety comes to be substituted in his place by paying the debt, he may have an immediate right against the principal. If that right can be postponed for a single day, it may be for a month or a year." (*Bangs* v. *Strong,* supra.) It makes no difference for how short a period the time is extended. (Brandt on Suretyship, sec. 378.)

If the creditor without the consent of the surety does any act which, in contemplation of law, alters the surety's liability, increases his risk, or deprives him even for a moment of the right to pay the debt and assume the position of the creditor, or of his right to seek indemnity, the surety is thereby discharged and the fact that the surety may not have been actually injured is immaterial. (*Barker* v. *Illinois Surety Co.,* 169 Ky. 441, 184 S. W. 377; *Miller* v. *Stewart,* 8 Wheat. 680, 6 L. Ed. 189; *Evatt* v. *Dulaney,* 51 Okl. 81, 151 Pac. 607; *Booth* v. *Irving Exchange Bank,* 116 Md. 668, 82 Atl. 652; Sheldon on Subrogation, pp. 145, 146.)

In interpreting sections 2819 and 2840 of the California Code, identical with our 8188 and 8201, the court of that state said: "Our decisions construing these sections uniformly hold that if there has been such a change in the contract in any

(material) respect, the inquiry there ends and the guarantor is exonerated, and that it is not a subject of inquiry whether the alteration has or has not been to his injury.'' (*First Congregational Church of Christ* v. *Lowry,* 175 Cal. 124, 165 Pac. 440; and see *Dunne Inv. Co.* v. *Empire State Surety Co.,* 27 Cal. App. 208, 150 Pac. 411.)

Construing the identical statutes the supreme court of South Dakota said: ''Generally a surety is discharged if the creditor deprives him of any right which he would have against the principal, even though he be benefited, whether such injury arises from some positive act, or omitting to do something which it was the duty of the creditor to perform.'' (*Hampe* v. *Manke,* 28 S. D. 501, 134 N. W. 60; *Farmers & Merchants State Bank* v. *Tasche,* 53 S. D. 603, 222 N. W. 139; and see *Wilson* v. *J. W. Crowders Drug Co.,* (Tex. Com. App.) 222 S. W. 223; *Paine* v. *Jones,* 76 N. Y. 274.)

In *Dodd* v. *Vucovich,* supra, we have seen that this court said that the surety would have been discharged had the contract been valid. There cannot be any doubt, the circumstances considered, that the agreement of November 28 had no other effect, and could have no other effect, than to delay the surety in taking advantage of the principal debtor's defaults, in case the surety had desired to do so (and this court cannot say that upon being apprised of the facts he would not have done so); nor can there be any doubt that the remedies and rights of the creditor against the principal in respect to the original obligation were suspended. The lower court's findings, whether directly or indirectly to the contrary, are not sustained by the law or the evidence.

It follows that, as to defendant Burns, the judgment cannot stand. The cause is remanded to the district court of Yellowstone county with direction to cancel the decree in so far as it directs the entry of a personal judgment against the defendant Burns, who shall recover his costs upon this appeal.

Associate Justices Galen, Ford, Angstman and Matthews concur.

Rehearing denied October 22, 1931.